UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO: 5:07-CV-2-R

KELLY T. JENKINS, as Personal
Representative and Administrator of the
Estate of Robbie Lynn Jenkins                                                    PLAINTIFF

v.

LIVY LEAVELL, JR., et al.                                                          DEFENDANTS

## MEMORANDUM OPINION

This matter is before the Court upon the Defendants' Motion for Summary Judgment

(Docket #36). The Plaintiff responded (Docket #42), and the Defendants replied (Docket #52).

This matter is ripe for adjudication. For the following reasons, the Defendants' Motion is

**GRANTED**.

## BACKGROUND

To begin, the Court notes that the parties dispute a few of the facts in the following

recreation of events and provide competing interpretations or characterizations of other facts.

While the Court must draw all inferences in favor of the Plaintiff in resolving this motion for

summary judgment, the Court is not obligated to accept misstatements as truth.

On January 1, 2004, Kelly and Robbie Jenkins, husband and wife, were arrested in Todd

County, Kentucky, by the Kentucky State Police (KSP) on charges of manufacturing

methamphetamine, possession of anhydrous ammonia in an improper container with the intent to

manufacture methamphetamine, possession of a controlled substance, trafficking in a controlled

substance, possession of marijuana, and possession of drug paraphernalia. Upon arrest, the

Jenkins' were placed in the same KSP car to be transported to the Christian County Jail. Kelly

testified that while the two were in the car, Robbie informed him that she had swallowed a little

under a gram of methamphetamine contained in a plastic baggie that she had in her pocket. The two were then taken to the Christian County Jail and booked.

The Inmate Medical Form completed during Robbie's booking process indicates that she was asked multiple questions related to her health and medical treatment. She answered "no" to "Do you have any illnesses?" and "Do you need immediate medical attention for any present illness or injury?" She answered "yes" to "I have been informed that sick call is done daily and a medical request form must be completed?" Neither Robbie nor Kelly informed the Jail staff that Robbie had swallowed methamphetamine prior to her incarceration.

After being booked, Robbie was placed in Cell 200 for observation during the first two days of her incarceration. While she was in the cell, she was observed every fifteen minutes, and the deputy observing her noted her activity on a surveillance form. The surveillance form indicates that over the two days, she was mainly observed laying on a mat, sitting at the table, and sleeping at the table. On January 3, 2004, Robbie was moved to a general population cell.

On January 4, Robbie and Kelly were allowed to visit together. During that visit, Robbie told Kelly that she had a cold and her chest was hurting. On January 5, the two were transported to Todd County for a court appearance regarding their pending charges. During the bus ride to Todd County, Kelly claims Robbie informed him that she had seen a nurse, and had been told she had pleurisy, but all the nurse could do was give her Tylenol.[1] There is no record of Robbie having seen a nurse at the Jail prior to the bus ride.

---

[1]As discussed later in this opinion, Kelly also stated in his deposition that Robbie had seen Dolly Chester, a certified nursing assistant. He then stated that Robbie did not specifically tell him who she had seen. Chester has testified that she has no recollection of seeing Robbie and would not be able to identify pleurisy as a medical condition.

2

Judy Cook, a fellow inmate, was placed in a holding cell with Robbie while they awaited transportation to Todd County, and rode the bus there with Robbie and Kelly.  Cook claims that Robbie never told her she felt sick or that she had been denied medical treatment, and that she did not appear to be sick.  Cook also claims that she could hear Robbie and Kelly's conversation on the bus, and during that time Robbie never told Kelly that she felt ill or had been denied medical treatment.

At 2:25 a.m. on January 5, Robbie was involved in a conflict with two other inmates in her cell.  The Incident Report states that the deputies heard yelling coming from the cell, and upon entering the cell, Robbie told them that she was experiencing a conflict with the other inmates.  The deputies moved her to a new general population cell and interviewed her, concluding that Robbie "was the problem."  One of the inmates with whom Robbie had the altercation, Jennifer Burse, stated that Robbie was coughing and looked ill, but that she refused assistance when jail officers asked her if she would like help.  Burse stated that she and the other inmates did not get along with Robbie because she did not bathe or take care of herself and was combative.

On January 6, Robbie was involved in a second altercation with other inmates.  The Incident Report indicates that Robbie had been threatening the other inmates in the cell and had not bathed.  Robbie was placed in a lawyer's conference room and interviewed by Lieutenant Bruce Glover.  Lieutenant Glover asked Robbie about any medical problems, and Robbie informed him that she had trouble breathing, and had pleurisy, but she had not seen a doctor.  Lieutenant Glover asked her if she would like a medical slip to see a nurse or doctor, but she refused and stated she wanted to be left alone.  Robbie was then moved to an isolation cell.

3

Robbie remained in insolation through January 12.

Inmate Lola Roman was in an isolation cell directly across from Robbie and states that she could see into Robbie's cell. Roman stated that she could see Robbie sitting on her mat, drinking sodas and smoking cigarettes. Roman testified in her deposition that Robbie appeared sick to her because she stopped eating and after a few days stopped getting off her mat. However, Robbie never told that Roman that she was sick, and Roman never heard Robbie asking the deputies for assistance or medical help and never requested a medical slip.

On January 12, while making her rounds, Deputy Sheila Barfield stopped at Robbie's cell and noticed that she did not appear well. It is unclear whether Deputy Barfield was signaled by Roman or whether Barfield stopped on her own accord. Deputy Barfield obtained permission to place Robbie in a  medical observation cell, where she was observed every fifteen minutes. The surveillance form indicates that Robbie was observed laying on the mat during the duration of the observation, although she did make one trip to the bathroom. At 10:05 a.m., Robbie was transported to the Jennie Stuart Medical Center Emergency Room.

Deputy Nelta Yeager was called to the hospital to stand guard over Robbie. Robbie told Yeager that during her arrest, Kelly told her to get rid of the methamphetamine in their house, so she swallowed "a whole bunch" of it to protect him. Robbie told Yeager she was sick while at the jail, but that she had not requested medical attention because she was scared Kelly would get into trouble.

The "Discharge Summary" prepared by Robbie's attending physician, Dr. Sanjay Chavda, reveals that Robbie was intubated and placed on a ventilator in the Emergency Room. X-rays revealed that Robbie's right lung was nearly "completely consolidated" while her left

4

lung was clear, and that the consolidation was "likely related to severe pneumonia." Dr. Chavda stated in the Discharge Summary that she had "streptococcal pneumonia with ALDS and multiple organ failure with underlying sepsis." Dr. Chavda testified that streptococcal pneumonia is the most common type of pneumonia.

On the morning of January 13, Robbie coded three times but was resuscitated. The medical staff then spoke with Kelly Jenkins and informed him that Robbie's prognosis was extremely poor and that she would not make it through another resuscitation. Kelly signed a do-not-resuscitate order. Robbie expired at 11:22 a.m. on January 13. In his deposition, Dr. Chavda stated that Robbie's cause of death was "septic shock and multiorgan failure from overwhelming pneumonia."

In January 2005, Kelly Jenkins, as personal representative and administrator of Robbie's estate, filed this lawsuit, pro se, in Christian County Circuit Court. The Defendants removed the case to this Court in January 2007.

## STANDARD

Summary judgment is available under Fed. R. Civ. P. 56(c) if the moving party can establish that the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material

fact." *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989).  The test is whether

the party bearing the burden of proof has presented a jury question as to each element in the

case.  *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996).  The plaintiff must present more than a

mere scintilla of evidence in support of his position; the plaintiff must present evidence on which

the trier of fact could reasonably find for the plaintiff.  *See id.* (citing *Anderson v. Liberty Lobby,

Inc.*, 477 U.S. 242, 251-52 (1986)).  Mere speculation will not suffice to defeat a motion for

summary judgment: "the mere existence of a colorable factual dispute will not defeat a properly

supported motion for summary judgment.  A genuine dispute between the parties on an issue of

material fact must exist to render summary judgment inappropriate."  *Moinette v. Elec. Data Sys.

Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

## DISCUSSION

The Plaintiff's original complaint names sixteen Defendants: Jailer Livy Leavell, Jr.,

William Crouch, M.D.,[2] Dolly Chester, Hope Stringer, Cansanya Henry, Captain Davy Burd,

Lieutenant Bruce Glover, Christian County Judge Executive Steve Tribble, and Christian County

Magistrates Rudolph Pettus, Ed Long, Mark Cansler, James Carr, Jim Fleming, Myron Dosset,

Bill Bruce, and Lewis Croft.  The Plaintiff has alleged five causes of action: a violation of 42

U.S.C. § 1983 (Count II), three state tort claims of negligence, intentional infliction of emotional

distress, and gross negligence (Counts I, III, and IV), and a conspiracy claim under 42 U.S.C. §

1985 (Count V).

The Plaintiff alleges that each of the fifteen remaining Defendants is liable for a violation

of 42 U.S.C. § 1983 and the three state law tort claims.  It appears that the only Defendant

---

[2]Dr. Crouch has been dismissed from this action.

6

Plaintiff alleges participated in a conspiracy in violation of 42 U.S.C. § 1985 is Defendant Burd. While the complaint lists and defines each of the parties, the Plaintiff makes specific allegations against only three of the Defendants: Livy Leavell, Jr., Lieutenant Bruce Glover, and Captain Davy Burd. In his response to the Defendants' Motion for Summary Judgment, the Plaintiff makes specific arguments as to the liability of only Defendant Burd, and that is with regard to his conspiracy claim under 42 U.S.C. § 1985.

Before discussing the merits of the Plaintiff's claims against the other Defendants, the Court notes that Defendants Hope Stringer and Cansanya Henry are entitled to a dismissal of all claims against them. The Defendants have provided evidence that neither was employed at the Christian County Jail when Robbie Jenkins was incarcerated there in January of 2004. Defendant Stringer did not begin working at the Jail until April 16, 2005. Defendant Henry was not employed by the Jail until June 1, 2004. The Plaintiff has failed to refute this argument and has not even mentioned either of these Defendants by name. Therefore, the claims against Defendants Stringer and Henry are **DISMISSED** with prejudice.

Similarly, the Defendants argue that Defendant Chester, a certified nursing assistant at the Jail, is entitled to summary judgment because the Plaintiff has produced no evidence that she had any involvement with Robbie Jenkins. In his response to the motion for summary judgment, the Plaintiff failed to address the Defendant's arguments regarding the lack of proof against Defendant Chester. In the complaint, the Plaintiff makes no specific allegations against Defendant Chester; she is named as a party, but is not mentioned in any other capacity.

"[E]vidence submitted in opposition to a motion for summary judgment must be admissible," and hearsay and evidence irrelevant to the issue presented must therefore be

7

disregarded.  *U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1189 (6th Cir. Mich. 1997) (citing *Monks v. Gen. Elec. Co.*, 919 F.2d 1189, 1192 (6th Cir. 1990)*; Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 968-69 (6th Cir. 1991)).  In his deposition, the Plaintiff testified that Robbie told him on January 5 while they were riding the bus to Todd County that she had seen Dolly Chester about her illness.  However, he then corrected himself stating that Robbie "didn't get specific" with the name of the nurse she saw.  This appears to constitute the entirely of the Plaintiff's case against Defendant Chester.  The Plaintiff also states in his response to the motion for summary judgment that Robbie told him she saw Defendant Chester, although he clearly stated *in his own deposition* that Robbie did not in fact specifically tell him that she had seen Defendant Chester.  Beyond this inconsistency, the Plaintiff's deposition statement as to what Robbie told him is clearly inadmissible hearsay as it is being offered for the truth of the matter asserted.

The Plaintiff has no other proof that Defendant Chester had any involvement in this incident.  Defendant Chester testified that she has no recollection of ever seeing, speaking about, or being aware of the presence of Robbie Jenkins.  There is no evidence in the record that Robbie saw a member of the medical staff at the jail prior to January 12, when she saw nurse Annmarie Hewell, who recommended Robbie be sent to the emergency room.  If there is no evidence that Robbie Jenkins received medical care from Defendant Chester, she cannot be liable for any of the Plaintiff's claims because as a nursing assistant at the Jail, she only saw inmates who were brought to her for medical attention.  She was not responsible for independently identifying ill inmates.

For these reasons, Defendant Chester is **GRANTED** summary judgment as to the claims

against her in this action.

**A.  Count II: Failure to Provide Medical Treatment Under 42 U.S.C. § 1983**

The Plaintiff's 42 U.S.C. § 1983 claim is based on alleged violations of both the Eighth and Fourteenth Amendments.  To establish a claim under § 1983, a plaintiff must "identify a right secured by the United States Constitution and the deprivation of that right by a person acting under color of state law."  *Russo v. City of Cincinnati*, 953 F.2d 1036, 1042 (6th Cir. 1992).  The Eighth Amendment's protections apply specifically to post-conviction inmates, and at all times relevant to this action, Robbie Jenkins was a pretrial detainee at the Christian County Jail.  However, under the Due Process Clause of the Fourteenth Amendment "pretrial detainees have a right to adequate medical treatment that is analogous to the Eighth Amendment rights of prisoners."  *Watkins v. City of Battle Creek*, 273 F.3d 682, 685-86 (6th Cir. 2001) (citing *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983)).

"To sustain a cause of action under § 1983 for failure to provide medical treatment, [a] plaintiff must establish that the defendants acted with 'deliberate indifference to serious medical needs.'" *Id.* at 686 (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).  The deliberate indifference standard is a two-pronged analysis, with both an objective and a subjective component.  *Farmer v. Brennan*, 511 U.S. 825, 835-37 (1994).  "For the objective component, the detainee must demonstrate 'the existence of a sufficiently serious medical need.'"  *Estate of Carter v. City of Detroit*, 408 F.3d 305, 311 (6th Cir. 2005) (quoting *Blackmore v. Kalamazoo County*, 390 F.3d 890, 895 (6th Cir. 2004) (internal citation omitted)).  "For the subjective component, the detainee must demonstrate that the defendant[s] possessed 'a sufficiently culpable state of mind in denying medical care.'" *Id.* (quoting *Blackmore*, 390 F.3d at 895)

9

(quoting *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir.2000))).

The objective prong requires the inmate to demonstrate that he or she "'is incarcerated under conditions posing a substantial risk of serious harm,' so as to avoid 'the unnecessary and wanton infliction of pain.'" *Blackmore*, 390 F.3d at 896 (quoting *Farmer*, 511 U.S. at 834)..

"Deliberate indifference is not mere negligence." *Watkins*, 273 F.3d at 686. The subjective prong requires the plaintiff to prove "the defendants knew of and disregarded a substantial risk of serious harm to the inmate's health and safety." *Id.* (citing *Farmer*, 511 U.S. at 835-37). Knowledge is essential; "[t]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. "If an officer fails to act in the face of an obvious risk of which he should have known but did not, the officer has not violated the Eighth or Fourteenth Amendments." *Watkins*, 273 F.3d at 686 (citing *Farmer*, 511 U.S. at 837-38).

## 1. Official Capacities

The Plaintiff has sued the remaining Defendants in both their individual and official capacities. The Plaintiff's suit against the eight Christian County Magistrates, Judge Executive Tribble, Jailer Livy Leavell, and the two Deputy Jailers, Burd and Glover, in their official capacities is equivalent to a suit against the entity on whose behalf they acted in January 2004-Christian County. *Johnson v. Karnes*, 398 F.3d 868, 877 (6th Cir. 2005) (citing *Monell v. New York Depart of Social Services*, 436 U.S. 658, 690 n.55 (1978)). "[A] municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691. "A governmental entity is liable under § 1983 only when the entity itself is a 'moving force' behind the deprivation, *Polk County* v. *Dodson*, 454 U.S. 312, 326 (1981); thus, in an official-capacity

suit the entity's 'policy or custom' must have played a part in the violation of federal law." *Ky. v. Graham*, 473 U.S. 159, 166 (1985).

"For purposes of § 1983, a 'custom' is a legal institution that is permanent and established, but is not authorized by written law." *Feliciano v. City of Cleveland*, 988 F.2d 649, 655 (6th Cir. 1993) (citing *Monell*, 436 U.S. at 691). "Before a custom can be the basis for a civil rights violation, the custom must be 'so permanent and well settled as to constitute a 'custom or usage' with the force of law.'" *Id.* (quoting *Monell*, 436 U.S. at 691).

It appears that the Plaintiff may be arguing that the Christian County Jail had a custom of failing to comply with the requirements of Kentucky's Administrative Regulations, 501 KAR 3:090, which establish minimum standards of medical care for inmates in full-service correctional facilities such as the Christian County Jail. The Plaintiff has not demonstrated that there are genuine issues of material fact relative to any such custom or policy of Christian County. The Plaintiff neither alleged in his complaint nor presented any evidence in response to the motion for summary judgment that Christian County has a policy of inadequately complying with the various provisions of 501 KAR 3:090.

Further, in making this untenable argument, the Plaintiff provides no proof that the Defendants even violated these regulations in Robbie's case or that they have ever been violated by the Jail in the past. Instead, the Plaintiff provides his own, unsubstantiated interpretation of what these regulations mean and how they were violated. For the purpose of §1983 liability, an alleged failure to follow a state administrative regulation is simply not evidence of a permanent and established custom that is employed by a municipality with the force of law. *Feliciano*, 988 F.2d at 655.

As "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory," *Monell*, 436 U.S. at 691, Christian County cannot be held liable for the failure of one of its Jail employees to follow any administrative requirements in the absence of some policy of custom which a resulted in any alleged lack of medical care for Robbie.  Therefore, the Defendants are entitled to summary judgment as to the Plaintiff's claims against the Defendants in their official capacities.

**2.  Individual Capacities**

The Plaintiff's § 1983 claim against the Defendants in their official capacities must be dismissed, leaving his claim against the eight Christian County Magistrates, the Judge Executive Tribble, Jailer Livy Leavell, and the two Deputy Jailers, Burd and Glover, in their individual, or personal, capacities.  "Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law."" *Graham*, 473 U.S. at 165.  To establish personal liability in a § 1983 action, the plaintiff must show that "the official, acting under color of state law, caused the deprivation of a federal right."  *Id.* at 166.  An official in a personal capacity action may assert a personal immunity defense such as qualified immunity.  *Id.* at 166-67.

The Defendants argue that they are each entitled to qualified immunity as to the Plaintiff's § 1983 claim.  Section 1983 is limited by the qualified immunity exception such that "[g]overnment officials performing discretionary functions are entitled to qualified immunity from civil suits for damages arising out of the performance of their official duties 'as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated.'"  *Watkins v. City of Southfield*, 221 F.3d 883, 887 (6th Cir. 2000) (quoting

*Anderson v. Creighton*, 483 U.S. 635, 638 (1987)).  As noted above, a plaintiff bringing a § 1983 claim must both identify "a right secured by the United States Constitution" and prove "the deprivation of that right by a person acting under color of state law."  *Russo v. City of Cincinnati*, 953 F.2d 1036, 1042 (6th Cir. 1992).  "'The key inquiry in analyzing a claim of qualified immunity is whether the defendant's alleged conduct violated clearly established statutory or constitutional rights of which a reasonable person would have known.'" *City of Southfield*, 221 F.3d at 887 (quoting *Adams v. Metiva*, 31 F.3d 375, 386 (6th Cir. 1994)).

Thus, a plaintiff "must overcome two hurdles."" *Id.*  "'First, the allegations must state a claim of the violation of clearly established law.  Second, the plaintiff must present evidence sufficient to create a genuine issue as to whether the defendant in fact committed the acts that violated the law.'" *Id.* (quoting *Adams*, 31 F.3d at 386).  "A successful § 1983 claimant must establish that the defendant acted knowingly or intentionally to violate his or her constitutional rights, such that mere negligence or recklessness is insufficient."  *Ahlers v. Schebil*, 188 F.3d 365, 373 (6th Cir. 1999).  To "remove the cloak of qualified immunity" from the Defendants, the Plaintiff must establish that the Defendants knowingly or intentionally violated Robbie's right to adequate medical treatment.  *Id.*

A pre-trial detainee's right to adequate medical treatment under the Due Process Clause of the Fourteenth Amendment is clearly established.  *Watkins*, 273 F.3d at 685-86.  The Defendants do not dispute that Robbie Jenkins was entitled to adequate medical treatment.  However, the Defendants argue that there is no evidence sufficient to create a genuine issue as to whether they violated Robbie's constitutional rights, or, even if they did violate her constitutional rights, whether they knowingly or intentionally violated the law.  *Ahlers*, 188 F.3d

13

at 373.

For the following reasons, the Court finds that the circumstances of this case indicate no knowing violation of established statutory or constitutional rights by any of the Defendants.

### a. Deputy Jailers Burd and Glover

The only Defendants in this action for which there is proof of involvement, however slight, with Robbie Jenkins while she was incarcerated at the Christian County Jail from January 1 through January 12, 2004, are Deputy Jailers Davy Burd and Bruce Glover.  Defendant Burd figures heavily in the Plaintiff's conspiracy claim, discussed below, which involves events that allegedly took place after Robbie was taken to the Jennie Stuart Medical Center Emergency Room.

The Plaintiff makes no specific allegations against Defendant Burd with regard to his cause of action under § 1983 for failure to provide medical treatment.  The Plaintiff's only mention of Defendant Burd in this context in his response to the motion for summary judgment is a statement that on January 12, 2004, Deputy Sheila Barfield obtained permission from Defendant Burd to move Robbie to a medical observation cell to await treatment by a nurse. This order is documented in an Incident Report dated January 13.

The Plaintiff has produced no evidence that Defendant Burd acted with deliberate indifference Robbie Jenkins' medical needs. *Watkins*, 273 F.3d at 686.  In fact, ordering Robbie's move to a medical observation cell demonstrates awareness of the fact that Robbie was ill and a conscious choice to take steps to help her.  "Deliberate indifference requires that the defendants knew of and disregarded a substantial risk of serious harm to [Robbie's] health and safety." *Id.*  The Plaintiff has failed to produce any evidence that Defendant Burd acted in such a

14

manner.

It appears that among the Defendants, Defendant Glover had the most interaction with Robbie Jenkins during her incarceration.  On January 6, 2004, when Defendant Glover interviewed Robbie in the lawyer's conference room after her altercation with the other inmates in her general population cell, he actually asked her if she would like a medical slip so that she could see a nurse.  However, Robbie refused medical treatment, stating that she wanted to be left alone.  Defendant Glover also testified that Robbie did not appear ill to him; her skin was not discolored, she was not coughing during their interview, she had no noticeable breathing problems, and she was up and walking around during their interview.

Lola Roman testified that after she told Defendant Glover that Robbie was not feeling well, he stopped and talked to her.  According to Roman, Defendant Glover stopped at Robbie's isolation cell and called her name, but Robbie said "I'm alright" and went back to her mat. There is no further evidence in the record regarding this incident.

From the evidence presented, it appears to the Court that this case is analogous to *Watkins v. City of Battle Creek*.  In *Watkins*, the inmate Watkins ingested a significant amount of cocaine just prior to being arrested,  and he subsequently died of a cocaine overdose a few hours later while in custody.  273 F.3d at 684.  The Sixth Circuit upheld the district court's grant of summary judgment to all of the defendants on the plaintiff's §1983 failure to provide medical treatment claim.  *Id.* at 686.  The officers who arrested Watkins did not tell the jail personnel that the circumstances of Watkins' arrest indicated that he may have ingested cocaine or that he had denied swallowing drugs.  *Id.* at 684.  Despite this, the jail personnel asked Watkins if he had swallowed any drugs, informing him that he would not face additional charges and they would

15

get him medical treatment if he had. *Id.* at 686.  However, Watkins repeatedly denied the need for medical treatment. *Id.*  He was kept under observation and his movements were noted. *Id.*

The Sixth Circuit held that the plaintiff could not establish a question of fact on the issue of deliberate indifference because the case did not "involve an incapacitated detainee or one who asked for but was refused medical treatment." *Id.*  The court refused to acknowledge the plaintiff's attempt to fault the jail personnel for not "forcing medical treatment on Watkins in the face of his repeated denials and plausible explanations." *Id.*  Here, the Plaintiff argues, essentially, that all of the Defendants should have known the seriousness of Robbie's condition and that they ignored her illness.  However, the Plaintiff has not proved that any of the Defendants he has named, besides Glover, even had an opportunity or reason to know that Robbie was ill.  Like *Watkins*, there is no evidence that this case involves an incapacitated inmate or one who asked for but was refused medical treatment.

To prove his claim against Defendant Glover, the Plaintiff must show that he "knew of and disregarded a substantial risk of serious harm to [Robbie's] health and safety." *Id.*  The Plaintiff has failed to produce such evidence to establish a question of fact on the issue of deliberate indifference.

Defendants Burd and Glover are entitled to the defense of qualified immunity because the Plaintiff cannot prove that they "violated clearly established statutory or constitutional rights of which a reasonable person would have known." *City of Southfield,* 221 F.3d at 887.

### b. Jailer Livy Leavell

At the time of the allegations set forth in the Plaintiff's complaint, Livy Leavell, Jr. was the Jailer at the Christian County Jail.  Defendant Leavell testified that he has no recollection of

16

ever seeing or talking to Robbie Jenkins.  He testified that he did not make any decision to move her to various cell.  He also testified that he never had a conversation with any other member of the Jail staff about Robbie while she was incarcerated there.  The Plaintiff has not refuted these assertions nor provided any evidence of Defendant Leavell's personal involvement in the case at hand.

Section 1983 liability must be based on more than *respondeat superior.  Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (citing Hays *v. Jefferson County, Ky*., 668 F.2d 869, 874 (6th Cir. 1982)).  The failure of a supervisory official such as Jailer Leavell to "supervise, control, or train the offending individual is not actionable unless the supervisor 'either encouraged the specific incident of misconduct or in some other way directly participated in it.  At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers.'"  *Id.* (quoting *Hays*, 668 F.2d at 874).

As noted above, there is no evidence that Defendants Burd and Glover acted with deliberate indifference to Robbie Jenkins' medical needs.  The Plaintiff has not even alleged that Defendant Leavell directly participated, encouraged, authorized, or acquiesced in the alleged denial of medical treatment, and he has not produced any evidence that he violated Robbie Jenkins's Fourteenth Amendment right to adequate medical treatment.  Thus, as a matter of law, Defendant Leavell did not commit a constitutional violation nor did he violate a clearly established right to which Robbie Jenkins was entitled.

### c.  Judge Executive Tribble and the Eight Magistrates

Similarly, The Plaintiff has failed to produce any evidence that the nine members of the

Christian County Fiscal Court had any involvement whatsoever in the incident in question. Section 1983 liability must be based on more than *respondeat superior*.  *Shehee*, 199 F.3d at 300.  As noted above, the Plaintiff has failed to produced evidence showing that Defendants Burd and Glover acted with deliberate indifference to Robbie Jenkins' medical needs.  In addition, the Plaintiff has not even alleged that the members of the Fiscal Court directly participated, encouraged, authorized, or acquiesced in the alleged denial of medical treatment, and he has not produced any evidence that the members of the Fiscal Court violated Robbie Jenkins's Fourteenth Amendment right to adequate medical treatment.  Thus, as a matter of law, Defendants Tribble, Pettus, Long, Cansler, Carr, Fleming, Dossett, Bruce, and Croft did not commit a constitutional violation nor did they violate a clearly established right to which Robbie Jenkins was entitled.

Defendants Burd, Glover, Leavell, Tribble, Pettus, Long, Cansler, Carr, Fleming, Dossett, Bruce, and Croft are entitled to the defense of qualified immunity as to the Plaintiff's individual capacity § 1983 claims.

## B.  Count V: Conspiracy under 42 U.S.C. § 1985

In Count V of the complaint, the Plaintiff alleges that on or about January 13, 2004, Defendant Burd informed Deputy Sheila Barfield that the incident report she had prepared on January 12, 2004, chronicling her observations regarding the events surrounding Robbie's removal from her isolation cell and placement in the medical observation holding cell had been deleted from the Christian County Jail's computer system.   The Plaintiff alleges that Defendant Burd instructed Barfield to draft a second incident report omitting any reference to negligent action or inaction by the Jail or its employees.  Barfield testified that her original statement was

18

destroyed and the second statement was substituted in its place.  The Plaintiff alleges that the

Defendants' actions in ordering the destruction and substitution represents a conspiracy under 42

U.S.C. § 1985 because it was "calculated to impede, hinder, obstruct or defeat the due course of

justice in a subsequent legal proceeding."

The Defendants claim that the Plaintiff has alleged a violation of § 1985(3); however, the

language used in the complaint is that of § 1985(2), and the Plaintiff claims that he has been

*impeded in the prosecution of this action* by the destruction of the original incident report.  There

are two clauses to subsection § 1985(2).  "The first clause relates to the intimidation of witnesses

in *federal* court proceedings; that clause does 'not require allegations of class-based animus.'"

*Doherty v. American Motors Corp.*, 728 F.2d 334, 339 (6th Cir. 1984) (citing *Kush v. Rutledge*,

460 U.S. 719 (1983)).  The second clause, however, "applies to conspiracies to obstruct the

course of justice in state courts," *Kush v. Rutledge*, 460 U.S. 719, 725 (1983), and *does* require a

showing of such animus.  The second clause of § 1985(2) creates a cause of action against "two

or more persons" who:

> conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner,
> the due course of justice in any State or Territory, with intent to deny to any citizen the
> equal protection of the laws, or to injure him or his property for lawfully enforcing, or
> attempting to enforce, the right of any person, or class of persons, to the equal protection
> of the laws…

Therefore, it is clear to the Court that the Plaintiff's § 1985 conspiracy claim is one

brought under the second clause of § 1985(2).  Under this clause, the Plaintiff "must demonstrate

that there was 'some racial, and perhaps otherwise class-based, invidiously discriminatory

animus behind the conspirators' action," because the use of "language requiring the intent to

deprive of *equal* protection, or *equal* privileges and immunities," requires such animus.  *Dallas*

v. *Holmes*, 137 Fed. Appx. 746, 753 n.5 (6th Cir. 2005) (unpublished) (quoting *Kush*, 460 U.S. at

726).  "The conspiracy, in other words, must aim at a deprivation of the equal enjoyment of

rights secured by the law to all."  *Kush*, 460 U.S. at 726 (quoting *Griffin* v. *Breckenridge*, 403

U.S. 88, 102 (1971)).  The Plaintiff has not alleged that Robbie was a member of a protected

class or that she was discriminated against based upon her membership in such a class.

Therefore, he does not have a valid claim under § 1985(2).  The Defendants' Motion for

Summary Judgment as to Count V, conspiracy under 42 U.S.C. § 1985, is **GRANTED**.

### C.  Counts I, III, IV: State Law Claims

The Defendants have been granted summary judgment as to all federal claims asserted in

this matter by the Plaintiff.  As such, the Court finds that it does not have pendent jurisdiction

under 28 U.S.C. § 1367 to address the remaining state law claims asserted against the

Defendants.  *See* 28 U.S.C. § 1367(c)(3) ("[t]he district courts may decline to exercise

supplemental jurisdiction over a claim under subsection...if...the district court has dismissed all

claims over which it has original jurisdiction"); *Taylor v. First of America Bank-Wayne*, 973

F.2d 1284, 1287-88 (6th Cir.1992) (holding that "if the federal claims are dismissed before

trial...the state claims should be dismissed as well."); *Hankins v. The Gap, Inc.*, 84 F.3d 797,

802-03 (6th Cir. 1996).  Accordingly, the Court declines to exercise jurisdiction as to the

remaining state law claims asserted against the Defendants, and therefore, the remaining state

law claims are **DISMISSED**.

### CONCLUSION

For the foregoing reasons, the Defendants' Motion for Summary Judgment is

**GRANTED**.  Accordingly, all claims against the Defendants are **DISMISSED**.

An appropriate order shall issue.